## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. _____

**JAMES D. SALLAH, not individually, but
solely in his capacity as Court-Appointed
Receiver for JCS Enterprises Inc., d/b/a
JCS Enterprises Services Inc., T.B.T.I. Inc.,
My Gee Bo, Inc., JOLA Enterprise Inc.,
and PSCS Holdings, LLC,**

   **Plaintiff,**

**-vs.-**

**JOSEPH SIGNORE, individually, and
LAURA SIGNORE, individually,**

   **Defendants.**
_____/

### COMPLAINT

Plaintiff James D. Sallah, Esq. ("Plaintiff," "Mr. Sallah," or the "Receiver"), not individually, but solely in his capacity as Court-Appointed Receiver for JCS Enterprises Inc., d/b/a JCS Enterprises Services Inc. ("JCS"), T.B.T.I. Inc. ("TBTI"), My Gee Bo, Inc. ("Gee Bo"), JOLA Enterprise Inc. ("JOLA"), and PSCS Holdings, LLC ("PSCS") (collectively, the "Receivership Entities" or the "Receivership Estate"), by and through undersigned counsel, hereby files suit against Joseph Signore ("Joseph Signore") and Laura Signore ("Laura Signore"), (collectively "Defendants"), for declaratory, legal, and equitable relief, and alleges as follows:

### I.   PARTIES AND OTHER RELEVANT PERSONS

#### A.  THE RECEIVER, JAMES D. SALLAH, ESQ.

1. On April 7, 2014, the United States Securities and Exchange Commission (the "SEC") commenced an action against JCS, TBTI, and two individuals, Joseph Signore ("Joseph

Signore") and Paul L. Schumack, II ("Paul Schumack") in the case styled, *Securities and Exchange Commission v. JCS Enterprises, Inc., d/b/a JCS Enterprises Services, Inc., T.B.T.I. Inc., Joseph Signore, and Paul L. Schumack, II.*, Case No. 14-CV-80468-MIDDLEBROOKS/BRANNON (S.D. Fla. Apr. 7, 2014) (the "SEC Case").

      2.      On April 7, 2014, the Honorable Donald M. Middlebrooks, United States District Court Judge, issued an Amended Receivership Order and appointed Mr. Sallah as Receiver over JCS and TBTI.  On April 14, 2014, the Court expanded the Receivership over Gee Bo.  On December 12, 2014, the Court expanded the Receivership over JOLA and PSCS.

      3.      On December 15, 2014, the Court reappointed Mr. Sallah as Receiver for the Receivership Entities (the "Reappointment Order").

      4.      In the Reappointment Order, the Court has directed the Receiver to:

> Investigate the manner in which the affairs of the Receivership Entities were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Entities and their investors and other creditors, as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations, which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from investors in the Receivership Entities, including their officers, directors, employees, affiliates, subsidiaries, or any persons acting in concert or participation with them, or against any transfers of money or other proceeds directly or indirectly traceable from investors in the Receivership Entities; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute §726.101, *et seq.* or otherwise, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order.

      5.      In accordance with the Reappointment Order, Mr. Sallah has brought this action, not in his individual capacity, but solely in his capacity as Court-Appointed Receiver, seeking, in the alternative:

    a.  to avoid transfers made to Defendants, as well as those transfers made for the benefit of Defendants;

    b.  for the imposition of a constructive trust over the assets traceable to the Receivership Estate that were transferred to Defendants or for Defendants' benefit;

    c.  for a judgment in the amount equal to the value of the assets transferred to Defendants from the Receivership Estate, plus prejudgment interest;

    d.  for a judgment in the amount equal to the value of the assets transferred from the Receivership Estate for Defendants' benefit, plus prejudgment interest; and

    e.  for the imposition of a constructive trust over the value of the corporate opportunities diverted, misappropriated, and/or wasted by Defendants, as a result of their breach of fiduciary duty.

**B.  THE RECEIVERSHIP ENTITIES**

6.    JCS is a Delaware corporation, incorporated in 2010, with its principal place of business in Jupiter, Florida.  Joseph Signore was the Chairman and President of JCS, and Laura Signore was its Vice Chairperson and Vice President.

7.    TBTI is a Florida corporation, incorporated in 2001, with its former principal place of business in Coconut Creek, Florida.  Paul Schumack was Vice President of TBTI, and Christine Schumack ("Christine Schumack") was its President.

8.    Gee Bo is a Florida corporation, incorporated in 2013, with its former principal place of business in Jupiter, Florida.  Joseph Signore was Gee Bo's President and Laura Signore was its Treasurer and Secretary.

9.    JOLA was a Florida corporation, incorporated in 2013, with its former principal place of business in Jupiter, Florida.  Joseph Signore was JOLA's President and Laura Signore was its Treasurer and Secretary.

10.     PSCS was a limited liability company organized under the laws of the State of Florida in 2013 with its former principal place of business in Highland Beach, Florida.  Paul and Christine Schumack were PSCS's member-managers.

C.  DEFENDANTS JOSEPH AND LAURA SIGNORE

11.     Joseph Signore resides in Palm Beach County, Florida.

12.     Laura Signore resides with Joseph Signore in Palm Beach County, Florida.

## II.  JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 78aa, 28 U.S.C. § 754, and principles of ancillary or supplemental jurisdiction under 28 U.S.C. § 1367.  This Complaint is brought to accomplish the objectives of the Receivership Order, and thus this matter is ancillary to the Court's exclusive jurisdiction over the Receivership Estate.

14.     The Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. §§ 754 and 1692.

15.     Venue in this District and Division is proper under 28 U.S.C. § 754 as this action is related to the Commission Proceeding pending in this District and the Receiver was appointed in this District.

## III.  FACTS RELEVANT TO THE RECEIVER'S CLAIMS

A.  THE JCS-TBTI PONZI SCHEME

16.     JCS manufactured and marketed virtual concierge machines ("VCMs"), which are free-standing or wall-mounted, ATM-like machines that were promised to be placed at various locations to enable businesses to advertise their products and services via touch screen and printable tickets or coupons which were dispensed from the VCMs.

4

17.     In 2011, JCS and TBTI entered into an agreement whereby TBTI would be the sales agent for JCS and its Virtual Concierge program.

18.     From at least as early as 2011 through April 7, 2014, Defendants operated JCS.

19.     From at least as early as 2011 through April 7, 2014, Paul Schumack operated TBTI.

20.     Defendants and Paul Schumack offered and sold investments in JCS's virtual concierge machines ("VCMs"), which would purportedly pay income to investors from advertising revenues generated by the VCMs.

21.     JCS, TBTI, and Gee Bo, combined, raised approximately $80.8 million from at least 1,800 investors nationwide by selling contracts for more than 22,500 VCMs.

22.     JCS and TBTI sold each VCM for an average of between $2,600 and $4,500.  These sales to investors were documented through contracts with JCS and TBTI, and those contracts represented that advertising revenue would provide investors with a return of $300 per month, per machine, for thirty-six (36) to forty-eight (48) months, or a return of at least $10,800 over a 36 month period.

23.     However, advertising revenues were grossly insufficient to pay the promised returns to investors.

24.     During the relevant time period from 2011 through April 7, 2014, JCS and TBTI, combined, earned a total of approximately $21,000 in advertising revenue from these machines.

25.     To put things into perspective, the advertising revenue actually generated by VCMs would not even have supported the obligations for **two** (2) VCMs that were sold under the shorter, 36-month contracts.  Moreover, based on a conservative calculation assuming that the payment stream would be limited to 36 months, JCS and TBTI would have been obligated to pay more than

$243.4 million to investors during the duration of these investment contracts, or $6.75 million per month.

26.     Besides approximately $21,000 in advertising revenue, JCS and TBTI generated no other meaningful source of revenue or cash inflows from which to pay investors or any other creditors.

27.     In order to maintain the fiction that the investment was valid and make these payments to investors, Defendants caused JCS, and Paul Schumack caused TBTI, to use new investor funds to make so-called "returns" to earlier investors in the total amount of $49.7 million.

28.     While Defendants operated JCS, they caused JCS to transfer monies, among other things:  (a) as returns and/or redemptions to earlier investors; (2) for commissions paid to agents who perpetuated their scheme; (3) for their own use, including diverting funds to themselves or other companies they controlled; and (4) to vendors in order to continue to operate their scheme for the purposes of raising additional capital from potential and existing investors.

29.     These transfers were made almost exclusively from: (1) principal money from new investors; (2) existing investors' principal investment money; and/or (3) additional principal investment money from existing investors.

30.     The transfers that Defendants wrongfully caused JCS to make to third parties, including as returns and/or redemptions to investors, commissions paid to agents, and payments to third party vendors, were made for Defendants' benefit by the purpose of continuing their scheme.

31.     Thus, the monies transferred or paid to Defendants and which Defendants caused the Receivership Entities to make to third parties, were improperly diverted assets of one or more of the Receivership Entities.

32.     As a result, Defendants operated JCS as part of a single, continuous Ponzi scheme.

B. **DEFENDANTS USED JCS AND JOLA FOR THEIR OWN PERSONAL BENEFIT AND TO THE DETRIMENT OF THE RECEIVERSHIP ESTATE**

33. Defendants personally received transfers from JCS for the time period from at least December 11, 2011 to April 7, 2014 and caused JCS to make payments for Defendants' benefit.

34. Specifically, as detailed in Exhibit A through C, attached hereto and incorporated herein, based on the records reviewed by the Receiver as of the filing of this Complaint, between 2011 and April 7, 2014, Defendants caused JCS and JOLA to pay cash to:

    a. Defendants, jointly, $17,500.00;

    b. Defendant Joseph Signore, $607,036.25; and

    c. Defendant Laura Signore, $819,723.42.

35. These payments are itemized in Exhibit A through C, respectively, and Exhibits A through C detail the date and amount of each such payment.

36. As detailed in Exhibit C, attached hereto, Defendant Laura Signore also received $2,500.00 from TBTI.

37. During the time period from at least December 11, 2011 to April 7, 2014, Defendants also caused JCS and JOLA to purchase real property, personal property, and other goods and to pay for credit cards for Defendants' benefit, as shown in Exhibit D. These payments total $3,006,074.04 and are itemized in Exhibit D which details the payee of each transfer and the date and amount of each such payment.

38. Among other things, Defendants used JCS to pay over $2 million to American Express; $3,562.65 to Boca Tanning Club; $27,387.25 to Discover Card; and $25,000.00 to Gold Distributors Inc. for the purchase of gold bars.

39. Altogether, these cash transfers and payments made for Defendants' benefit total $4,452,833.71.

40.     Additionally, Defendants caused JCS and Gee Bo to make payments to third parties for Defendants' benefit, including commissions paid to agents and payments to investors as purported income payments.  Each of these payments caused Defendants' Ponzi scheme to continue operating, allowing Defendants to continue to receive payments from JCS that otherwise would have been unavailable to them.

41.     Every transfer Defendants wrongfully caused JCS to make was made to perpetuate Defendants' Ponzi scheme.

42.     JCS did not receive a reasonably equivalent value in exchange for these transfers of funds made to Defendants or for Defendants' benefit.

43.     At the time of these transfers, Defendants were engaged, or were about to engage, in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction.

44.     At the time of these transfers, Defendants intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

45.     JCS was harmed by this unauthorized course of conduct, which Defendants effectuated through their control of JCS, Gee Bo, and JOLA.

46.     This conduct dissipated JCS's assets.

47.     Accordingly, Defendants are debtors under FLA. STAT. §726.102(6), and the Receiver, on behalf of JCS, is a creditor of Defendants.

### C.  DEFENDANTS' RETENTION OF THE BENEFITS CONFERRED BY THE RECEIVERSHIP ESTATE

48.     JCS conferred benefits on Defendants, including the transfer to Defendants of more than $4 million for Defendants' own personal use or for their personal benefit.

49.     Defendants accepted these benefits willfully and voluntarily.

50.     Defendants continue to retain the benefits conferred on them by JCS.

51.     To allow the Defendants to retain JCS's funds would be inequitable and unjust, including to investors in JCS.

**CONDITIONS PRECEDENT**

52.     All conditions precedent for asserting the claims herein have been satisfied, executed or waived.

**COUNT I**
**28 U.S.C. §2201(a):**
**DECLARATORY JUDGMENT**

53.     The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 52.

54.     There is an actual case and controversy between the Receiver and Defendants over (a) whether assets transferred to Defendants by the Receivership Entities, or any of them, are the property of the Receiver and (b) whether Defendants hold property which is rightfully the property of the Receivership Entities subject to a constructive trust in the Receiver's favor.

55.     Pursuant to 28 U.S.C. §2201(a), the Receiver seeks a declaration of his rights and obligations, as Receiver for JCS, Gee Bo, and JOLA, and other legal relations with respect to the assets traceable to the Receivership Estate that were transferred to Defendants or for Defendants' benefit and the right to the imposition of a constructive trust over these assets.

WHEREFORE, the Receiver asks this Court for a declaration that determines whether assets transferred to Defendants by the Receivership Entities, or any of them, are the property of the Receiver and whether Defendants hold property which is rightfully the property of the Receivership Entities subject to a constructive trust in the Receiver's favor.

## COUNT II
### FLA. STAT. §726.105(1)(a):
### UNIFORM FRAUDULENT TRANSFER ACT
### (AGAINST BOTH DEFENDANTS)

56.     The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 55.

57.     The Receiver brings this claim in the alternative to his requests for relief under the remaining counts in this Complaint to the extent it is not inconsistent with the relief requested herein.

58.     Defendants caused JCS to transfer funds to Defendants, or either of them, directly or indirectly, with actual intent to hinder, delay or defraud the Receivership Entities' creditors.

59.     Defendants caused JCS to transfer funds to third parties, and Defendants were the persons for whose benefit the transfers were made.

60.     The Receiver is entitled to avoid these fraudulent transfers, pursuant to FLA. STAT. §§ 726.105(1)(a) and 726.108(1)(a).

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Joseph and Laura Signore, collectively and individually, directly or indirectly, avoiding all transfers from JCS to Defendants, or either of them, directly or indirectly; together with interest and costs, and for such other and further relief as the Court may deem just and proper, including the imposition of a constructive trust over the assets fraudulently transferred to Defendants.

## COUNT III
### FLA. STAT. §726.105(1)(b):
### UNIFORM FRAUDULENT TRANSFER ACT
### (AGAINST BOTH DEFENDANTS)

61.     The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 60.

62.     The Receiver brings this claim in the alternative to his requests for relief under the remaining counts in this Complaint to the extent it is not inconsistent with the relief requested herein.

63.     JCS did not receive a reasonably equivalent value in exchange for the transfer of funds from JCS to Defendants or either of them, directly or indirectly.

64.     JCS did not receive a reasonably equivalent value in exchange for the transfer of funds Defendants caused JCS to make to third parties for Defendants' benefit.

65.     When these transfers were made, Defendants were engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction.

66.     When these transfers were made, Defendants intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as the debt became due.

67.     The Receiver is entitled to avoid these transfers, pursuant to FLA. STAT. §§726.105(1)(b) and 726.108(1)(a).

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Joseph and Laura Signore, collectively and individually, avoiding all transfers from JCS to Defendants, or either of them, directly or indirectly, together with interest and costs, and for such other and further relief as the Court may deem just and proper, including the imposition of a constructive trust over the assets fraudulently transferred to Defendants.

## COUNT IV
### FLA. STAT. §726.105(1)(b):
#### UNIFORM FRAUDULENT TRANSFER ACT
#### (AGAINST BOTH DEFENDANTS)

68.     The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 67.

69.     The Receiver brings this claim in the alternative to his requests for relief under the remaining counts in this Complaint to the extent it is not inconsistent with the relief requested herein.

70.     JCS did not receive a reasonably equivalent value in exchange for the transfer to the Defendants, or either of them.

71.     JCS did not receive a reasonably equivalent value in exchange for the transfer of funds Defendants caused JCS to make to third parties for Defendants' benefit.

72.     Defendants were insolvent at the time of the transfers or became insolvent as a result of the transfers.

73.     The Receiver is entitled to void these transfers, pursuant to FLA. STAT. §§726.106(1) and 726.108(1)(a).

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Joseph and Laura Signore, collectively and individually, avoiding all transfers from JCS to Defendants, or either of them, directly or indirectly, together with interest and costs, and for such other and further relief as the Court may deem just and proper, including the imposition of a constructive trust, including the imposition of a constructive trust over the assets fraudulently transferred to Defendants.

**COUNT V**
**FLA. STAT. §726.106(1):**
**UNIFORM FRAUDULENT TRANSFER ACT**
**(AGAINST BOTH DEFENDANTS)**

74.     The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 73.

75.     The Receiver brings this claim in the alternative to his requests for relief under the remaining counts in this Complaint to the extent it is not inconsistent with the relief requested herein.

76.     JCS's claim arose before Defendants caused JCS to transfer funds to themselves or to third parties for Defendants' benefit, whether directly or indirectly.

77.     JCS did not receive a reasonably equivalent value in exchange for the transfers to Defendants or to third parties for Defendants' benefit, whether directly or indirectly.

78.     Defendants were insolvent at the time of the transfers or became insolvent as a result of the transfers.

79.     The Receiver is entitled to avoid these transfers pursuant to FLA. STAT. §§726.106(1) and 726.108(1)(a).

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Joseph and Laura Signore, collectively and individually, avoiding all transfers from JCS to Defendants, or either of them, directly or indirectly, together with interest and costs, and for such other and further relief as the Court may deem just and proper, including the imposition of a constructive trust over the assets fraudulently transferred to Defendants.

**COUNT VI**
**UNJUST ENRICHMENT**
**(AGAINST BOTH DEFENDANTS)**

80.     The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 15 and 48 through 51.

81.     This unjust enrichment claim is asserted in the alternative, in the event the remaining claims pleaded provide an inadequate remedy at law.

82.     Defendants received benefits from JCS.

83.     Defendants knowingly and voluntarily accepted and retained these benefits.

84.     The circumstances alleged in this compliant render Defendants' retention of those benefits inequitable and unjust, including to the investors of JCS as a whole, so Defendants must pay the Receiver, acting on behalf of JCS, the value of the benefit received.

85.     Defendants have been unjustly enriched at the expense of JCS (and, ultimately, their investors) in the amount of the transfers to the Defendants, and JCS, through the Receiver, are entitled to judgment in that amount.

86.     The Receiver, on behalf of JCS, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Joseph and Laura Signore, collectively and individually, for the value of the benefits conferred on Defendants, or either of them, directly or indirectly, together with interest and costs, and for such other and further relief as the Court may deem just and proper, including the imposition of a constructive trust over the assets fraudulently transferred to Defendants.

## COUNT VII
### CONVERSION
#### (AGAINST BOTH DEFENDANTS)

87.     The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 86.

88.     The Receiver brings this claim in the alternative to his requests for relief under the remaining counts in this Complaint to the extent it is not inconsistent with the relief requested herein.

89.     Through the actions described above, Defendants exercised control over JCS's property in a manner inconsistent with JCS's rights of ownership, including Defendants' instructions to JCS to transfer property to Defendants and to third parties for Defendants' benefit.

90.     The Receiver has demanded the return of the property from the Defendants, but to no avail.

91.     The Defendants' conversion of JCS's funds was willful, malicious and done in the conscious disregard of JCS's rights, entitling JCS to a judgment for the return of their property.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Joseph and Laura Signore, collectively and individually, for the value of the property wrongfully converted by Defendants, or either of them, directly or indirectly, together with interest and costs, and for such other and further relief as the Court may deem just and proper, including the imposition of a constructive trust over the assets fraudulently transferred to Defendants.

## COUNT VIII
### BREACH OF FIDUCIARY DUTY
#### (AGAINST BOTH DEFENDANTS)

92.     The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 91.

93.    The Receiver brings this claim in the alternative to his requests for relief under the remaining counts in this Complaint.

94.    Defendant Joseph Signore was the Chairman and President of JCS and was President of Gee Bo and JOLA.

95.    Defendant Joseph Signore owed JCS, Gee Bo, and JOLA a fiduciary duty of loyalty and care in handling the property of JCS, Gee Bo, and JOLA, respectively.

96.    Defendant Laura Signore was the Vice Chairperson and Vice President of JCS and was Treasurer and Secretary of Gee Bo and JOLA.

97.    Defendant Laura Signore owed JCS, Gee Bo, and JOLA a fiduciary duty of loyalty and care in handling the property of JCS, Gee Bo, and JOLA, respectively.

98.    Defendants breached their fiduciary duties owed to JCS, Gee Bo, and JOLA by diverting assets that could have been used for lawful purposes away from JCS, Gee Bo, and JOLA for unauthorized uses, including the transfers of assets to Defendants and to third parties for Defendants' benefit.

99.    Each transfer of property Defendants diverted away from JCS, Gee Bo, and JOLA caused JCS, Gee Bo, and JOLA could have been applied to the debt due, namely, the very funds being transferred.

100.    Defendants, therefore, caused JCS, Gee Bo, and JOLA to waste valuable corporate opportunities and to enrich Defendants at the expense of JCS, Gee Bo, and JOLA.

101.    As a direct and proximate result of Defendants' breach of fiduciary duty, the Receivership Estate has been harmed in an amount to be determined at trial.

102.     Under the circumstances, the Receivership Estate is entitled to the recovery of the assets Defendants diverted away from JCS, Gee Bo, and JOLA, as well as the imposition of a constructive trust in the Receivership Estate's favor.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Joseph and Laura Signore, collectively and individually, for the value of the corporate opportunities diverted, misappropriated, and/or wasted by Defendants, together with interest and costs, and for such other and further relief as the Court may deem just and proper, including the imposition of a constructive trust for the Receivership Estate's benefit.

Respectfully submitted,

**SALLAH ASTARITA & COX, LLC**
*Counsel for James D. Sallah, Esq., not individually, but solely in his capacity as Receiver*
One Boca Place
2255 Glades Road, Ste. 300E
Boca Raton, FL 33431
Tel.: (561) 989-9080
Fax: (561) 989-9020

/s/Joshua A. Katz, Esq.
**Joshua A. Katz, Esq.**
Fla. Bar No. 0848301
Email: jak@sallahlaw.com
**Jeffrey L. Cox, Esq.**
Fla. Bar No. 0173479
Email: jlc@sallahlaw.com